The second case is number 21-1942 United States v. John Carlos Polaco-Hance. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning. My name is John Carlos Polaco-Hance, and the issue I want to appeal is whether or not the 22% of the appellant's unannounced testimony was reasonable in his defense or invisible Bring it closer. For Polaco, who is a 30-year-old man, father of three in a long-term relationship with the Walgreens Street employment, he was arrested as a bystander. Based on the totality of the circumstances and facts, we conclude that the sentence was not sufficient and greater than the necessary to fulfill the sentencing purpose. We ask that he be remanded. Very briefly, Polaco was, one day, outside of his employment. He was four hundred and twenty-five, plainclothes, pushed without remorse under the guise that there was a gun that had been batched. He ran. He was arrested without incident. He was in a bag with the color of .357 Glock that had been modified and five magazines and a hundred environmental grounds on it. During this time, he was under supervised release for a prior crime that only had to do with a report patched by the court. He pled not guilty, went to trial, and after a very short four-day trial, ceased witness, was found guilty on both counts, fell into possession, and put on a machine gun. Before sentencing, there was no objections to the PSR by either party, and the government filed a lengthy sentencing memorandum. Asking for a nine-month open variance from 51 to 60 months. The court, at sentencing, asked the defense counsel and the bodies to address the sentencing issues. The defense counsel, and it's a long narrative, but I'll make the salient points because of time, basically objected to the nine-month open variance. Basically, this is a mine run case, not out of Parliament, and has no involvement of U.S. Supreme Court. Let me just focus you a little bit more, which is, I think your argument, you need to sort of address two things. One is, was this a mine run case or was it outside of the mine run? And then secondly, the explanation the district court gave here, was that adequate to justify the sentence that it gave him? If not, why wasn't it? Correct. So, the defense counsel did articulate that this was a mere position, contemplated by law, talking about violence, and that it was not an act of violence, and it's something that has no prior, in terms of the characteristics of the offense, that the gun had not been Yes, on probation, but had no prior history of gun violence. And that the guidelines did contemplate. What about the amount of ammunition here? Why isn't that, the government argues that takes it outside of the mine run, and I believe we have case law saying that the amount of ammunition here is not incorporated, not considered in the guidelines, is sufficient to take it out of the mine run. Could you address that? So, the court would have, other than just stating the 3553 reasonings, or the lack of the characteristics of the offense of the offender, they would have had to give some type of sentencing rationale, other than just saying that there's 181 grounds. Yes, there has been cases that, for ammunition, the courts have articulated, district court there is a reason why either the guidelines do not contemplate for ammunition, but we know, and more cited in mind from the previous cases, that just having ammunition per se is not a substantive offense, it's not even a lawful federal law, and in this case, there have been other cases that just for that articulation of having an amount of ammunition that is common in machine gun cases, these are 5 mags, excuse me, 111. In other cases, we have cases as we have Losanchez, in Gatsby, Losanchez had 5 magazines, 128 rounds that was overturned by this court. In Garcia, Perez, there was 3 mags, 67 rounds, and these are cases similar to judges. In the first case, I thought we said that the judge had to rely on the ammunition to justify the sentence, which is not the case here. And then in Garcia, I thought we said that we weren't going to get into whether 67 was enough or not. Well, here what we have in the record is the judge announcing his 5 order plate concerns Well, we have something somewhat different, which is the government specifically argued, if I recall, maybe I'm misremembering it, I thought the government specifically argued that although there was a problem potentially with looking at community characteristics of crime in Puerto Rico in a void, if it's tied to a case-specific factor, then that's okay, if the case-specific factor they identified was the ammunition. And I thought our case law suggested that we can deduce the rationale for a sentence in part from the arguments that were made by the parties. So the court in various absence of that, just making that statement as a matter of fact, did not give any explanation, any other rationale. I guess I'm asking, wasn't the government's argument in part tied to the fact that there was this ammunition in asking for the variance? Yes, it was. They made a better argument than the judge actually articulated. We've said that one way to understand that is not that the judge made a bad argument, but that it relied on a good argument when the parties made one. But in this case, when you look at the other arguments of criminal history, the judge mentions okay, he had a prior offense. It was for failure to report money. It's not a victimless crime. It's not an act of violence. And I think that there's on the record sufficient preservation of the arguments that were done in all fairness before the sentencing, not after the sentencing. But the government does concede that there is an existential reason for this argument right at page 40, when the argument that the recommended sentence of 60 months was objected to, and the court what they did was went above and went to an additional 12 months, knowing that there was going to be a revocation thereafter with a minimum of 12 to 18 months, which would have been subject of the appeal. But in terms of what was happening at the sentencing, there was sufficient notice and lack of notice by the sentencing judge to provide for any other additional objections. But that's the way that they wanted to go. Again, there are all factors in all these cases that judges can use to judge. Here, I don't think the articulation was sufficient in terms of the amount of variance that the court went over and above 12 months of the nine-month variance requested by the government. I think that when you look at the totality of the circumstances and the facts of the offender, there was no mention other than just two lines saying, he's a man 38 years old with three children. But you have no articulation of the characteristics of the offender, which in this case had no history of violence, no history of gun use, not even a statement that the gun was actually discharged. And I think that that was error in its 42% of variations. I think the court also, the court said that he had committed a crime earlier when I think he was on supervised police. Are you saying that's not a permissible? No. No. It is. But it's already been said that he was an assassin. It's in the rim of the history. Right? That's why he went to Category 3, which exposed him to a 41 to 51 sentencing range. Government asked him for nine months, and the court going 21 months above the sentencing under the characteristics of this particular case. Can I ask you about, so I started seeing the judge talks about the FBI expert who testified at trial about machine guns. And the way I read what he said is he says, machine pistols will rise up and above the target. And then he said some other things about the machine gun. Mr. Polanco did that. Can we consider that? Is there a factual basis in the record for that? Is what the judge said actually correct based on the expert's testimony? Do you have a position on that? I believe it's accurate. That was his testimony. I think that all this is verbiage and use of the dangerous of the machine gun, which is contemplating the guidelines, which is used in all the explanations that have been discussed in other cases in terms of it's not controllable, right? That it fires excessively. But I think that that's not something that is sufficient to warrant the over-variance of this case. So we would ask for it to be vacated. And we might have to do this for a 41 to 51 sentencing. Thank you. Thank you. Thank you, counsel. At this time, if counsel for the United States would please introduce himself on the record to begin. Please. May it please the court. Jonathan Young on behalf of the government. Your Honor, if I may go back to the last question asked regarding the FBI expert's testimony. I don't know if there's a factual basis. If I can refer the court to the appendix, page 299. That's where the testimony begins in the firearm expert. If I can just briefly quote at page 307, lines 22 to 25. This is from the FBI firearms expert who has 16 years of experience and testified that she examined thousands of firearms. She says, quote, I can't fire something like this in the water tank because of muzzle rise. That means if it does go full auto, the firing will kick back and it will keep getting higher and higher, unquote. She further testified that in fact, this is at page 309 of the appendix, that she confirmed that this particular block modified did in fact fire fully automatic. I guess one thing I was wondering though is, is that testimony specific to modified blocks only or all machine guns so that they all have these issues? In terms of, she says that at page 309 that if it does go full auto, the firing will kick back. And so in addition to that evidence, that testimony, there was also evidence in the government sensing memorandum where it referred to a U.S. Army manual which provided a factual basis to compare these kinds of converted machine guns to a machine gun that is manufactured as such. And when you have an actual machine gun that is intended to be a machine gun, according to that Army manual, it has support mechanisms, whether that's a tripod or a shoulder brace. I understand the argument that this feature of the machine gun when combined with community characteristics might in combination provide the basis for the variance. But are you saying that the fact of the machine gun here being a modified version as opposed to a manufactured one is itself a basis for a variance? Yes, Your Honor. Because what's a little surprising to me just goes back to the question I was asking in the last case. We're trying to figure out what's mine run. Is the idea that the commission imagined the mine run case being a manufactured machine gun? That seems a little bit odd. You would think that the more likely case and the one you see all the time are the modified ones. How many manufactured machine guns are out there and being accessed by criminals? Do we have any evidence on that? If Your Honor is asking me, yes, there are. Machine guns manufactured as such for the Army and the police. And how often are those the ones that the people that we see in federal criminal court on these charges are the ones that they have? The ones that I keep seeing are the modified ones. Yes, Your Honor. And I would think the commission, do we have any reason to think the commission was imagining the heartland case was one where the criminal had an Army-issued machine gun? I don't think we have any reason to believe that the commission even considered modified machine guns since they're a relatively recent phenomenon. How recent are they? Your Honor, I would say that in the States they're just beginning to be seen. Within the past couple of years, within Puerto Rico, they've been much longer. But I'm not aware of any evidence on the record indicating that the commission contemplated these modified Glocks. Anything suggesting they did? I'm not aware of any evidence either way, Your Honor. So how do we then factor that? I understand that's a different point than this particular case, which is a feature of the weapon, which makes it dangerous, which can be combined then with the non-heavy case head, which can be combined with the statistics in Puerto Rico or the situation in Puerto Rico. Our case laws maybe suggest that. But I'm just asking a slightly different question, which is, how do we have any basis for thinking that the fact that it's a modified weapon makes it not mine, Ron? I think it's a reasonable inference that when the commission is referring to machine guns, they're referring to devices that are manufactured as machine guns, not people who are tinkering in their homes or importing devices from China in order to jerry-rig devices into becoming something that they're not intended to be. So I do think it's a reasonable assumption that when the commission refers to machine guns, they're referring to devices manufactured as such, of which there are plenty out there for arming and for the police. And in fact, there is a Glock 18, which is sold in Europe, which is a modified machine gun. How old is this guy, Ron? Ron, I'm sorry, I don't have the answer to that, but I can submit the information if the court would like after the argument. And then I guess each version of the manual we're dealing with, the recent manual, that may be well after the phenomenon of these being modified occurred. Again, Your Honor, I don't know how much information the commission had with respect to these modified ones. In terms of the other characteristics here, we're not only— One last question, Your Honor. Who has the burden of demonstrating something's modified by what case? Your Honor, in terms of the burden, the district court in this case mentioned multiple reasons that place it outside by what case. I understand that they articulated a basis for saying it, but I'm trying to figure out who's responsible for making the case that the factor identified makes it not mine run as opposed to articulating a factor. Your Honor, I think that the either— Let me just take it the opposite way. Suppose it said, well, this one was manufactured. Most of them are modified. Therefore, it's not a mine run case. Presumably, on your own theory, that would be an impermissible ground to bury. So what I'm saying is, in a situation which I don't know, and you say there's no evidence either way, is the more typical one modified or is the more typical one manufactured? Who has to do something to put something in the record that helps us understand, well, which is it? Your Honor, I think that in this case, the government did put evidence, both from the U.S. Army manual as well as from the trial testimony, indicating that this place it outside of the mine run case. The government assumed that responsibility in this case to move it beyond the mine run. In addition to that—can I move on or additional? Thank you. In addition to that, we have, as Your Honor has mentioned, the amount of ammunition here. We have 111 rounds. That is higher, places in context, than Garcia Perez, which concerns 65 rounds, than Gonzalez Flores, which concerns 43 rounds. It is. But I guess it's a similar version of the question. Do we have any idea what the amount of ammunition—so one possible idea was the commission, when we got—we rejected that in a number of areas. We said 37 was entirely obvious that they had that in mind. I guess 40 too much 50. What are we supposed to be relying on to assess what is the Heartland case? It seems just like almost an inferior question in the ordinary case that they had in mind. I don't believe that. How are we supposed to do it? I think there are perhaps two ways of doing that. One is relying upon the district court's expertise, who is—the district court is in the position of sentencing individuals on a regular, sometimes daily basis, and can evaluate how much ammunition is a mine run case in this particular district and how much is not. Another way is by looking at the number of magazines, the capacity of the magazines. What's the typical capacity of a magazine? Do we have anything in the record about that? Well, we do have—in this case, there were four high-capacity magazines, which is 22 round. In this case, under the sentencing guidelines, they defined high capacity as more than 15, and there are additional enhancements provided for that. So I think that does give us a guideline for determining what's reasonable, what's mine run, and what's not. I think at the end of the day, though, whether it's— That suggests two magazines is mine run. I think it, again, depends upon the experience of the district court. I don't think that this court can set a— But we did. We said 37 was too low. In the Rivera-Vera, it was 36 rounds of ammunition, which in that case, in the context of that I think it also depends upon the amount of magazines. So, for example, if you have bullets loaded in magazines, and the magazines can be readily put into the gun, that's very different than if you have 100 rounds of magazine, which are loose in the back. So I think there's a context to this. In addition, in this case, we had the number of magazines. We had four high-capacity magazines. That places it well beyond Garcia Perez, Rivera Berrios, Garcia Mojica, as well as Gonzales Flores. Does the district court rely on the number of magazines? Yes. So that was both in the statement of reasons, the number of magazines, the amount of ammo. It was also twice cited within the oral sentence, 34 and 35 of the appendix. I would also note that the question is, where did this happen? Can you just finish this slide? Sure. This happened outdoors in a retail area. There was testimony that this happened— Does that rely on what the district court—? That was cited in the government's sentencing memorandum, which appellate counsel— As a fact or as a reason for the variance? As a reason for the variance. Not just as a fact? Not just as a fact, but as a reason for the variance. Thank you. Thank you. Thank you, counsel. There being no rebuttal, this concludes the second argument for today.